# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Howard G. Jackson,

          Plaintiff,

v.

David Ossell, and Melissa Gunderson,

          Defendants.

Civ. No. 17-5483 (JRT/BRT)

**\*SEALED\***
**REPORT AND**
**RECOMMENDATION**

---

Howard G. Jackson, *pro se* Plaintiff.

Judith A. Hanson, Esq., Saint Paul City Attorney's Office, counsel for Defendant Ossell.

---

BECKY R. THORSON, United States Magistrate Judge.

      This matter is before the Court on Defendant Ossell's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. (Doc. No. 21.) In response, pro se Plaintiff has filed several documents, including something self-styled as "Motions Judg[]ment and Pay" regarding Defendant Melissa Gunderson (Doc. No. 29), a "Motion[]" for "consent" (Doc. No. 30), and a "Motion to Consider more Evidence" (Doc. No. 45). The Court will issue an order on Plaintiff's motions separately. Defendant Ossell's Motion to Dismiss has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. (Doc. No. 33.) On August 31, 2018, this Court held a hearing on the

matter. (Doc. No. 47.) For the reasons stated below, this Court recommends that Defendant's motion be denied.

## BACKGROUND

Plaintiff filed a form Complaint in this Court on December 18, 2017. (Doc. No. 1, Compl.) He asserts that Defendants David Ossell and Melissa Gunderson[1] violated his Fourth Amendment rights under the Federal Constitution, to be protected from unreasonable search and seizure, when his home was accessed without a search warrant.[2] (Doc. No. 1, Compl. ¶ 4.)

According to Plaintiff, Defendant Ossell was contacted by Defendant Gunderson on October 29, 2012, regarding concerns about Plaintiff's child, who Gunderson thought was living with Plaintiff at that time.[3] Because Plaintiff was an untreated sexual offender, Gunderson requested a police hold "due to the child being endangered by living with

---

[1]    Defendant Ossell is a Saint Paul Police Officer, and Defendant Gunderson is a Ramsey County Protection worker.

[2]    Plaintiff originally listed "Human Resources Department" as a Defendant in his Complaint as well. On April 30, 2018, the Court dismissed Defendant Ramsey County Human Services Department without prejudice. (Doc. No. 17.) The Court also dismissed the official-capacity claims against Defendants Ossell and Gunderson without prejudice. (*Id.*) Defendant Ossell, in his present motion, requests the Court change its dismissal of the official capacity claims against him from without prejudice to with prejudice. This Court, however, will not recommend altering the Order issued by the District Court in this case. Defendant Ossell could have sought permission to request reconsideration from the District Court on this issue but did not do so.

[3]    Plaintiff alleges that he did not have custody of his child at this time. (Comp. ¶ 7.)

2

Jackson" and requested that the child be placed with the mother. (Doc. No. 2.)[4] Plaintiff

alleges that Ossell and Gunderson then used Plaintiff's sealed juvenile record to gain

access to Plaintiff's residence from Plaintiff's landlord, and thereafter made misleading

statements to the child custody court that caused him to lose custody of his daughter. In a

letter from Plaintiff's landlord submitted with Plaintiff's Complaint, the landlord

corroborates that sometime at the end of October 2012 he received a call from a Child

Protection Agency worker and police officer stating they were looking for Plaintiff, that

Plaintiff was a sex offender, and that they wanted to search his room. (Doc. No. 2.) The

landlord states that he "cooperated with the authorities and allowed them access without

any search warrant and permission from Howard Jackson," and then changed the lock to

Plaintiff's unit. (*Id.*) The landlord states that he later learned that Plaintiff's juvenile

record was sealed and allowed Plaintiff back into his room. (*Id.*)

In his Complaint, Plaintiff describes the basic facts underlying his claim as

follows:

> Due to Child Protection Ramsey County entering into my place without a
> search warrant or consent by me, they searched my place to use that as
> evidence in child custody to say that my child was in danger. At this
> moment, I didn't have custody of her [N.W.]. During this moment, Child
> Protection used sealed juvenile records to my landlord to get access of my
> place, in which those records were sealed away with the court. This illegal
> search caused me to get evicted from my place, 2013, and custody of
> [N.W.].

---

[4]    Plaintiff filed an Exhibit along with his Complaint, which includes the October 29,
2012 police report made by Defendant Ossell.

(*Id.* ¶ 7.) In Plaintiff's claim for relief, Plaintiff states he is "seeking emotional damages from financially losing my car, my home and unable to survive." (*Id.* at Request for Relief.)

Attached to Plaintiff's Complaint is another form Complaint with a caption for Ramsey County District Court. At the hearing on this matter, Plaintiff explained that a family member helped him fill this out, but it appears that it was filled out on the wrong court's form. The Ramsey County form Complaint was not filed with Ramsey County District Court, but instead was filed along with his form Complaint in this Court to supplement his federal court form Complaint. In its entirety, the allegations asserted in the attached Ramsey County form Complaint are as follows:

> 1. In 2013, David Ossell and Melissa Gunderson entered into my place without permission or consent by me avoiding my 4th Amendment.
> 2. David Ossell and Melissa Gunderson used my sealed juvenile record to get access from my landlord. This information is seal from and protected from the law.
> 3. Once inside they made misleading statement to child custody court, which caused me to lose all custody of my daughter.
> 4. Due to David Ossell and Melissa Gunderson falsely using my sealed juvenile record, my landlord evicted me from my place causing me to be homeless.

(Doc. No. 1-1.) In this attachment, Plaintiff stated that he demands judgment against Defendants as follows: "For them to overturn my child custody hearing. Emotional damages due to the defendants misleading and using my sealed juvenile record." (Doc. No. 1-1.)

On May 14, 2018, Defendant Ossell filed a Motion to Dismiss, arguing that the Court lacks subject-matter jurisdiction to overturn a state court custody decision, and alternatively that Plaintiff has failed to state a claim upon which relief can be granted. (Doc. Nos. 21, 23.) At the hearing on this matter, Plaintiff clarified that he is not seeking to have this Court overturn the child custody decisions, but instead is solely seeking damages for the Fourth Amendment violation.

## DISCUSSION

### I.    Standard of Review

Defendant Ossell argues that this Court does not have subject-matter jurisdiction over this case under the *Rooker-Feldman* doctrine because Plaintiff is asking the Court to overturn a State court's decision concerning his child custody dispute. A federal court is obligated to question its subject-matter jurisdiction—which is limited—before proceeding to the merits, and the party asserting jurisdiction bears the burden of overcoming the presumption that its cause of action lies outside of that limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1990). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "Subject matter jurisdiction . . . is a threshold requirement which must be assured in every federal case." *Turner v. Armontrout*, 922 F.2d 492, 493 (8th Cir. 1991). Application of the *Rooker-Feldman* doctrine is jurisdictional and may be raised *sua sponte*. *Johnson v. City of Shorewood*, 360 F.3d 810, 818 (8th Cir. 2004).

5

On a Rule 12(b)(1) motion challenging subject-matter jurisdiction, the court "has authority to consider matters outside the pleadings." *Osborn v. United States*, 918 F.2d 724, 729 n.4 (8th Cir. 1990). But the standards of Rule 56, which would apply to motions to dismiss for failure to state a claim under Rule 12(b)(6) that consider matters outside the pleadings, do not govern a motion challenging subject-matter jurisdiction. Rather, the standard for motions under Rule 12(b)(1) challenging subject-matter jurisdiction, including motions raising *Rooker-Feldman* issues, is different in that the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *P.G. v. Ramsey County*, 141 F. Supp. 2d 1220, 1230 (D. Minn. 2001) (quoting *Osborn*, 918 F.2d at 730). "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Osborn*, 918 F.2d at 730 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

Defendant Ossell argues alternatively that Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). When analyzing whether dismissal is warranted under Rule 12(b)(6) for failure to state a claim, a court generally must limit its inquiry to the pleadings, though "it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014) (quoting *Porous Media Corp. v. Pall*

*Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). A court must accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor; however, it need not accept "mere conclusory statements," including legal conclusions couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014); *Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010).

To withstand dismissal under Rule 12(b)(6), a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.    Subject-Matter Jurisdiction

With the exception of habeas corpus petitions, pursuant to the *Rooker-Feldman* doctrine, lower federal courts do not have jurisdiction over challenges to state-court judgments. *Niere v. St. Louis County*, 305 F.3d 834, 836 (8th Cir. 2002). The *Rooker-Feldman* doctrine is named after two U.S. Supreme Court cases – *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). *Rooker* holds that federal district courts have no appellate jurisdiction

over state courts, and *Feldman* holds that federal district courts may not exercise

judgment over issues that are "inextricably intertwined" with a prior state-court judgment.

*Canal Capital Corp. v. Valley Pride Pack, Inc.*, 169 F.3d 508, 512 (8th Cir. 1999). A

federal claim is inextricably intertwined when relief would effectively reverse or void the

state-court ruling. *Id.* (citations omitted).

The state and federal claims need not be identical and the federal action may be

construed as a prohibited appeal essentially whenever the federal relief can only be

predicated upon the determination that the state-court decision was wrong. *See Pennzoil*

*Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987); *see also Exxon Mobil Corp. v. Saudi Basic*

*Ind. Corp.*, 544 U.S. 280, 284 (2005) (stating that the *Rooker-Feldman* doctrine is

"confined to cases of the kind from which the doctrine acquired its name: cases brought

by state-court losers complaining of injuries caused by state-court judgments rendered

before the district court proceedings commenced and inviting district court review and

rejection of those judgments"). Therefore, district courts may not review state-court

decisions, "even if those challenges allege that the state court's action was

unconstitutional," *Feldman*, 460 U.S. at 486, because federal jurisdiction to review most

state court judgments is vested exclusively in the United States Supreme Court. *See* 28

U.S.C. § 1257; *Feldman*, 460 U.S. at 486. A party who was unsuccessful in state court

thus "is barred from seeking what in substance would be appellate review of the state

judgment in a United States district court based on the losing party's claim that the state

8

judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994). And federal district courts may not "exercis[e] jurisdiction over general constitutional claims that are 'inextricably intertwined' with specific claims already adjudicated in state court." *Id.* at 492–93.

Plaintiff made clear at the hearing before this Court that his case is not about gaining custody of his daughter, but instead he is seeking damages for the alleged Fourth Amendment violations by Defendants Ossell and Gunderson for entering his home without a search warrant. Plaintiff's Complaint, read liberally, aligns with Plaintiff's position at the hearing. Further, his Fourth Amendment constitutional claim is not 'inextricably intertwined' with the state court's custody decision. While Plaintiff references that Defendants used the information from the search and seizure during the custody hearings, his Fourth Amendment claim is strictly focused on the fact that Defendants entered his home without a warrant and his claim that he should be compensated for that constitutional violation. Therefore, based on the clarification given by Plaintiff at the hearing, this Court considers Plaintiff's reference seeking "[f]or them to overturn my child custody hearing" withdrawn from the attachment to the Complaint (Doc. No. 1-1) and finds that this Court does have subject-matter jurisdiction over Plaintiff's Fourth Amendment claim.[5]

---

[5]    To be clear, if Plaintiff were seeking to overturn the State court's custody decision regarding his daughter, this Court would not have jurisdiction over his claim because the

(Footnote Continued on Next Page)

III.    **Fourth Amendment Claim – Plausibility**

Under the Fourth Amendment, "[t]he right of the people to be secure in their

persons, houses,[6] papers, and effects, against unreasonable searches and seizures, shall

not be violated . . . ." U.S. Const. amend. IV. The Fourth Amendment, however, prohibits

only unreasonable searches, and circumstances will dictate whether or not particular

searches are reasonable. *Bell v. Wolfish,* 441 U.S. 520, 558 (1979). "It is well settled that

a seizure carried out without judicial authorization is per se unreasonable unless it falls

within a well-defined exception to this requirement." *Dixon v. Lowery*, 302 F.3d 857, 862

(8th Cir. 2002) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 474, 484 (1971);

*Lesher v. Reed*, 12 F.3d 148, 151 (8th Cir. 1994)); *see also Michigan v. Tyler*, 436 U.S.

499, 506 (1978) (stating that under the Fourth Amendment, "'one governing principle,

justified by history and by current experience, has consistently been followed: except in

certain carefully defined classes of cases, a search of private property without proper

consent is "unreasonable" unless it has been authorized by a valid search warrant'")

(quoting *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 528–29 (1967)). One

---

(Footnote Continued from Previous Page)
*Rooker-Feldman* doctrine bars this Court from reviewing claims to the extent that the
relief sought would effectively reverse or void the state court ruling in a custody/child
support case.

6      "[T]he Fourth Amendment protects an apartment tenant against an unreasonable
search of his dwelling, even though he is only a leaseholder." *Minnesota v. Carter*, 525
U.S. 83, 96 (1998) (Scalia, J., concurring) (citing *Chapman v. United States*, 365 U.S. 610
(Footnote Continued on Next Page)

such exception to the warrant requirement is when there are exigent circumstances. *See Payton v. New York*, 445 U.S. 573, 588–90 (1980) (stating that absent exigent circumstances, the threshold of a home may not reasonably be crossed without a warrant).

For Plaintiff's Fourth Amendment claim to survive a motion to dismiss, Plaintiff's pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotations omitted). Defendant Ossell asserts that Plaintiff's Complaint is deficient because it fails to allege the specific date of when the incident occurred and fails to state the address where the incident happened. Ossell also asserts that the Complaint should be dismissed because exigent circumstances existed that would have made entry into Plaintiff's home objectively reasonable, therefore qualifying as an exception to the warrant requirement.

First, Defendant Ossell is incorrect that Plaintiff failed to state the address where the incident happened; the Complaint alleges that the unreasonable search occurred at his "place" and the Exhibit submitted with the Complaint specifically identifies Plaintiff's address.

Second, the Court must take Plaintiff's allegations as true and it is confined by the allegations in the Complaint. Plaintiff alleges that Defendants entered his home without a search warrant or consent by him and searched his home for evidence to use in child

---

(Footnote Continued from Previous Page)
(1961)).

custody proceedings. Under well-established law, therefore, the type of intrusion alleged by Plaintiff would violate his Fourth Amendment rights, unless the Defendants can show exigent circumstances requiring a warrantless entry. But the facts relating to the scope of the search, the exact date of the search, the manner in which the search was conducted, and *the justifications* of the search are yet to be developed. Although Defendants may ultimately prove that the search was reasonable because there were exigent circumstances, this Court is unable at this stage to evaluate the underlying circumstances to determine if the search conducted in this case was reasonable and appropriate. Because Plaintiff has provided enough facts in his Complaint to provide Defendants notice of a plausible Fourth Amendment claim, this Court concludes Plaintiff has met the pleading standard.

## IV.    Fourth Amendment Claim – Qualified Immunity

Defendant Ossell also asserts that, even if Plaintiff pled a plausible claim, Ossell is entitled to qualified immunity. "Qualified immunity protects public officials from § 1983 damage actions if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanley v. Finnegan*, 899 F.3d 623, 626–27 (8th Cir. 2018) (quotations omitted). To determine whether a defendant is entitled to dismissal on the basis of qualified immunity, we consider "(1) whether the official's conduct violated a constitutional right; and (2) whether the violated right was clearly established." *Manning v. Cotton*, 862 F.3d 663,

668 (8th Cir. 2017). A complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. To prevail at this stage of the proceedings, Defendants must be entitled to qualified immunity "on the face of the complaint." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005).

This Court concludes that Defendant Ossell is not entitled to qualified immunity. First, the law prohibiting Defendant Ossell's conduct was clearly established at the time he allegedly entered Defendant's home – i.e., "the fundamental and long-established Fourth Amendment rights" to be "free from unreasonable governmental intrusion" in one's own home. *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995) (citing *Silverman v. United States*, 365 U.S. 505, 511 (1961)). And second, there is a material question of fact about whether Defendant Ossell's entry into Plaintiff's home was due to true exigent circumstances. *See Dawkins*, 50 F.3d at 535 (finding a material question of fact about whether the officers' entry into the home was a mistake amounting to plain incompetence). While Plaintiff's claims may or may not ultimately survive a summary-judgment motion, at this stage this Court concludes that Plaintiff has overcome a qualified immunity challenge with respect to his Fourth Amendment claim. *See Stanley*, 899 F.3d at 628 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." (quoting *Twombly*, 550 U.S. at 556)).

## RECOMMENDATION

Based on the file, records, and proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1.    Defendant's Motion to Dismiss (Doc. No. 21) be **DENIED**.

Date:  October 15, 2018

_s/ Becky R. Thorson_
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation by **October 29, 2018**. A party may respond to those objections within **fourteen days** after service thereof. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in D. Minn. LR 72.2(c).

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report and Recommendation.