# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| HOWARD G. JACKSON, | Civil No. 17-5483 (JRT/BRT) |
| Plaintiff, | |
| v. | ORDER ON MOTION FOR RECUSAL |
| DAVID OSSELL and MELISSA GUNDERSON, | |
| Defendants. | |

Howard G. Jackson, 153 Emerson Avenue East, Number 204, West St. Paul, MN 55118, *pro se* plaintiff.

Stephen J. Christie, 15 West Kellogg Boulevard, Suite 750, St. Paul, MN 55102, for Defendant David Ossell.

Plaintiff Howard G. Jackson brought this action against Defendants David Ossell, Melissa Gunderson and the Ramsey County Human Services Department. The Ramsey County Human Services Department was subsequently dismissed from this action. (Am. Order, Apr. 30, 2018, Docket No. 17.) The claims against Ossell and Gunderson in their official capacities were also dismissed. (*Id.*) The only remaining claim is one based on 42 U.S.C. § 1983, and is brought against Ossell and Gunderson in their individual capacities. Jackson alleges that Ossell and Gunderson violated his Fourth Amendment right to be free from unreasonable searches and seizures. (*See* Compl. at 3, Dec. 18, 2017, Docket No. 1; Ex., Feb. 20, 2018, Docket No. 6.) Jackson seeks damages for emotional harm. (Compl. at 4.)

Currently before the Court is Jackson's Motion for Recusal of Magistrate Judge Becky R. Thorson and Chief Judge John R. Tunheim. (Mot. for Recusal at 3, March 1, 2019, Docket No. 90.) Jackson also seeks to have Defendants' attorneys disqualified and removed from the case. (*Id.*) Alternatively, Jackson seeks to change the venue. (*Id.* at 4.) The Court will deny Jackson's Motion in its entirety because Jackson has failed to show why he is entitled to such actions.

## DISCUSSION

Jackson alleges the following facts:[1]

Some time in 2012, Jackson received full physical custody over his daughter, N.E.W. (*See* Aff. of Howard G. Jackson ("Jackson Aff.") at 2, Sept. 5, 2018, Docket No. 48.) After receiving full custody of N.E.W., Jackson spoke to his probation officer, M.B., about his receiving custody of N.E.W. (*Id.* at 2-3.) M.B., unsure whether Jackson could have full custody of N.E.W. due to a sex offense committed by Jackson when he was a minor, informed Jackson that he would be contacting the Ramsey County Human Services Department ("Human Services") to get the correct

---

[1] Jackson complains that the Court has not received nor reviewed his documents. The Court lays out Jackson's allegations to show him that it has received and reviewed every document he has filed. Although the Court does so, it does not adopt these allegations as true, nor as the facts of the case going forward.

Although not specifically referenced here, the Court has reviewed Jackson's latest submissions, including his multiple demands, letters, and objections in Docket Nos. 91-99. None of these documents require action from the Court, and some, such as Jackson's Notices to Sue (Docket Nos. 95, 98) appear to be complaints. The Magistrate Judge has previously denied Jackson's Motion to Amend his complaint, and as noted by the Magistrate Judge, the operative complaint going forward is Jackson's original complaint filed at Docket No. 1. (Order at 9, Jan. 24, 2019, Docket No. 83.)

answer. (*Id.* at 3-4.) Even after receiving full custody of N.E.W., Jackson never had actual custody of her because he never had the chance to get N.E.W. from her mother. (*Id.* at 4.)

After M.B. reported to Human Services, Jackson received a call from Gunderson, a Human Services social worker, requesting to meet at Jackson's apartment to talk about N.E.W. and whether Jackson was fit to be a parent. (*Id.* at 6.) Jackson declined to meet at his apartment. (*Id.*) Despite this, Gunderson and Ossell came to Jackson's apartment while he was out. (*See id.* at 18.) Gunderson and Ossell informed the landlord of Jackson's apartment, Greg Mach, that they needed to check within Jackson's apartment. (*Id.* at 9.) Mach asked if they had a warrant, and they responded that they did not have one. (*Id.*) Mach then declined to let them into the apartment. (*Id.*) Gunderson and Ossell then informed Mach that they would leave to get a warrant, and that Mach could get into trouble should there be a child in danger within the apartment. (*See id.*) Mach then allowed Gunderson and Ossell into Jackson's apartment without Jackson's consent and without a warrant. (*Id.* at 9-10.)

Jackson later returned to his apartment and discovered that the lock on his door had been changed. (*Id.* at 11.) When Jackson asked Mach why the locks had been changed, Mach explained that he was evicting Jackson because Gunderson and Ossell told him that Jackson was a registered sex offender. (*Id.* at 12.) Eventually, however, Mach agreed not to evict Jackson. (*Id.* at 13.)

The next day, Jackson went to see Gunderson at her office. (*Id.* at 14.) When Jackson asked Gunderson why she and Ossell went to his apartment, she looked lost. (*Id.* at 16.) Jackson was informed that N.E.W. had already been placed on hold, and had a

scheduled hearing in front of a court. (*Id.* at 17; Mot. to Am. Compl., Ex. 1, Oct. 26, 2018, Docket No. 53-1.) At the hearing, Jackson explained the circumstances of Ossell and Gunderson's visit to his home, but the court decided that because he is a registered sex offender, he could not have custody of N.E.W. (Jackson Aff. at 18-20.)

Jackson filed two CDs with the Court. (Notice of Evidence ("First CD"), March 29, 2018, Docket No. 11-1; Notice ("Second CD"), Apr. 25, 2018, Docket No. 14-2.) The first CD contains an audio file of a discussion between Jackson and a Child Welfare employee. (First CD.) Jackson asks why Child Welfare intervened despite a nine-year gap between his last offense and the date Jackson received custody of N.E.W. (*Id.*) The employee explained that Child Welfare Services is statutorily obligated to make those reports. (*Id.*) Jackson then asked why "you guys"—presumably Child Welfare—went to his house without permission. (*Id.*) The employee was unable to answer this question because she was not present during the incident. (*Id.*) When pressed, the employee offered that, had she been in the same situation, she would not have entered Jackson's house. (*Id.*)

The second CD also contained an audio file. (Second CD.) This audio file contains a discussion between Jackson and Judy Hanson, an attorney for the Saint Paul City Attorney's office who was representing Ossell. (*Id.*) In the discussion, Jackson says that he received a letter from the Saint Paul City Attorney's Office. (*Id.*) It arrived after a deadline to respond to the letter. (*Id.*) The envelope carrying the letter was addressed to 1350 Saint Clair, even though that was not Jackson's residence, but the letter itself contained Jackson's correct address at Emerson Avenue. (*Id.*) Hanson explained that her secretary might have made a mistake and that the 1350 Saint Clair address was the one

listed on Jackson's Complaint. (*Id.*)  Hanson then went on to explain that she would be filing a motion to dismiss, and needed to have a discussion with Jackson before doing so. (*Id.*)

I.   **MOTION FOR RECUSAL**

Jackson moves to have the Court and Magistrate Judge Thorson removed from this case.  A court should recuse from a matter if the Court's "impartiality might reasonably be questioned."  28 U.S.C. § 455.  The Court should recuse if it is shown that the Court has a personal bias or prejudice arising from an extrajudicial source.  *Rossbach v. United States,* 878 F.2d 1088, 1089 (8th Cir. 1989) (citing *United States v. Jones,* 801 F.2d 304, 312 (8th Cir. 1986)); *see also Liteky v. United States,* 510 U.S. 540, 551 (1994) (extrajudicial source is not the only basis for establishing disqualifying bias or prejudice, but is the most common basis).  Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion for disqualification.  *Liteky,* 510 U.S. at 555.

A.   **Magistrate Judge Thorson**

As to Judge Thorson, Jackson makes two allegations that he believes calls into question Judge Thorson's impartiality.  First, Jackson alleges that he requested sanctions for spoliation, but Judge Thorson denied it.  Second, Jackson alleges that Judge Thorson's judicial assistant refuses to let Jackson speak directly to Judge Thorson.  Neither of these acts show that Judge Thorson is partial in any way.  The Court notes that the evidence Jackson claims was spoiled—the two CDs he filed with the court—are in the Court's possession, and the Court has fully reviewed and listened to both CDs.  As for Jackson's

inability to directly reach Judge Thorson, it is not the practice of courts to allow parties to speak directly to a Judge outside of the courtroom in any case. Jackson has not shown any basis for Magistrate Judge Thorson's recusal.

### B. The Court

Jackson also makes two allegations that he believes calls into question the Court's impartiality. First, Jackson alleges that when he requests copies of documents he filed with the District of Minnesota Clerk's Office ("Clerk's Office"), he is denied access to them. Second, the Court's judicial assistant refuses to let Jackson speak directly to the Court. The first allegation does not call into question the Court's impartiality because the Court is not involved with parties' filings, and the Clerk's Office is a separate entity from the Court. As noted above, the second allegation does not call into question the Court's impartiality. Thus, the Court will deny Jackson's Motion for Recusal.

## II. MOTION FOR DISQUALIFICATION

Jackson also requests that the Court disqualify the Defendants' attorneys. "A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Macheca Transp. Co. v. Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (quoting *Banque Arabe Et Internationale D'Investissement v. Ameritrust Corp.*, 690 F. Supp. 607, 613 (S. D. Ohio 1988). A motion to disqualify counsel filed by the opposing party faces strict judicial review. *See Harker v. Comm'r of Internal Revenue*, 82 F.3d 806, 808 (8th Cir. 1996) ("Because of the

potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict judicial scrutiny.") (internal citation omitted).

Jackson has only made loose allegations that Ossell's attorney tampered with evidence, filed false reports, and covered up illegal activities.[2] Further, Jackson conclusorily alleges a conflict of interest, but does not explain who is involved, nor the conflict. Jackson has failed to show any evidence that entitles him to the extreme remedy of disqualification of an opposing party's attorney, and the Court will deny Jackson's Motion for Disqualification.

## III. MOTION TO TRANSFER

A party may move to transfer under 28 U.S.C. § 1404(a). Section 1404(a) states "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.* The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (internal quotation marks omitted). "[T]he party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 119 F.3d 688, 695 (8th Cir. 1997).

---

[2] Jackson appears to allege that Ossell's attorney tampered with evidence when a proposed order was mailed to Jackson with Ossell's motion to dismiss. (*See* Mot. to Reassign at 4, Apr. 3, 2019, Docket No. 102.) The Court notes, however, that it is normal practice for a party to submit a **proposed and unsigned** order with any motion it files. This is not tampering with evidence.

In considering a motion brought under § 1404(a), courts are to balance "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Id.* at 691. These factors merit "individualized, case-by-case consideration," in which courts "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). The movant must "show that the balancing of the . . . factors strongly favors transfer." *Brockman v. Sun Valley Resorts, Inc.,* 923 F.Supp. 1176, 1179 (D. Minn. 1996) (internal quotation marks omitted).

Jackson argues that—due to the misconduct and/or conflicts of interest of Ossell's attorney, the Magistrate Judge, and the Court—his case should be transferred to a different venue if his "situation can't be handle[d]." (Mot. for Recusal at 4.) Because Jackson fails to show misconduct or conflicts of interest, Jackson also fails to show a transfer is warranted. Jackson also fails to show that it would be more convenient for the parties or witnesses, or in the interest of justice to transfer his case. Furthermore, Jackson has not specified which court he would like his case transferred to, thus the Court is unable to balance the three factors above. Thus, the Court will deny Jackson's Motion to Transfer.

## IV. OBJECTION TO REASSIGNMENT OF CASE 19-CV-741

On March 18, 2019, Jackson filed another case (19-CV-741), alleging a host of constitutional violations. (*See* Compl., Case No. 19-cv-741, Mar. 18, 2019, Docket No. 1.) That case was originally assigned to United States District Court Judge Michael J. Davis. The case was subsequently reassigned to the Court. Jackson objects to this reassignment. (Mot. to Reassign, Apr. 3, 2019, Docket No. 102.)

Although the case has been reassigned, it is still its own separate case. The merits of this case (17-CV-5483) and Jackson's other case (19-CV-741) will be heard and decided separately. The reassignment was done to conserve judicial economy and make administration of Jackson's cases more efficient. Accordingly, the Court will deny Jackson's objections.

## V. REQUEST FOR A HEARING

Jackson requests a hearing. It is unclear which motion or motions he would like heard at such a hearing. Regardless, the Court has sufficient information from Jackson's filings and briefs to make a ruling on Jackson's motions without a hearing. The request will be denied.

## VI. REQUEST FOR RELIEF AS TO TORT CLAIM

Jackson requests that the Court "[t]ake care of [his] Tort Claim and Spoliation Jugement [sic] payment." (Mot. to Reassign at 1.) The Court cannot resolve Jackson's tort claim at this stage because such a resolution would require a motion from either party, or a trial. Jackson's spoliation allegation was addressed above.

## VII. MOTION TO UNSEAL COMPLAINT

Jackson, in a self-styled Motion to Make My Complaint In My Lawsuit Not Protection (Meaning) Public For Everyone, which the Court construes as a motion to unseal, moves to have the Court unseal his Complaint. (Mot. to Make My Compl. Not Protection at 1, Apr. 3, 2019, Docket No. 103.) The Complaint was filed as a sealed

document because it references a minor. The Court will order the Complaint to be filed unsealed subject to certain redactions to protect the identity of the minor named in the Complaint. All mentions of the minor's name, whether in full or only in part, shall be redacted.

**VIII. SERVICE ON MELISSA GUNDERSON**

Jackson also requests permission to serve Minnesota House Speaker, Melissa Hortman, because, he believes, she is the Melissa Gunderson that worked for Child Protective Services and entered his apartment in 2012. (Request to Serve Party, Apr. 1, 2019, Docket No. 101.) Jackson cites no evidence to show that this allegation is plausible. (*Id.*) Speaker Hortman is not a named defendant in this case, thus, the Court will deny Jackson's request to serve her.

Furthermore, the Magistrate Judge gave Jackson a deadline of thirty days from January 24, 2019, to serve Gunderson. (Order at 5, Jan. 24, 2019, Docket No. 84.) It is now beyond the thirty days, and Jackson has failed to serve Gunderson.

Properly effected service of process is a fundamental element to any lawsuit. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Defects in service of process are jurisdictional in nature. "If a defendant is improperly served, a federal court lacks jurisdiction over the defendant." *Printed Media Servs., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993). Rule 4(m) provides the following:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified

> time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). "The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)[.]" Fed. R. Civ. P. 4(c)(1); *see King v. Dingle*, No. 08-5922, 2009 WL 2208164, at *1 (D. Minn. July 22, 2009) (adopting Report and Recommendation) ("[I]t is the Plaintiff's responsibility to provide a proper address to effectuate service of process, and attempts to effectuate service cannot be considered good cause to grant an extension of time for that service."); *see also Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1307 (3d Cir. 1995) ("[R]eliance upon a third party or on a process server is an insufficient basis to constitute good cause for failure to timely serve, and is also an insufficient basis for granting an extension of time to effect service.").

The Court allowed additional time for service well beyond the 90 days provided for in Rule 4(m), and Plaintiff has neither provided the necessary information for service, nor has he provided good cause for the continued failure. Thus, the Court will dismiss Gunderson from the case without prejudice.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Recusal, Disqualification, and Transfer of Venue [Docket No. 90] is **DENIED**.

2. Plaintiff's Request to Serve Party [Docket No. 101] is **DENIED**.

3. Plaintiff's Motion to Reassign Case, Motion for Tort Claim, and Motion for Hearing [Docket No. 102] is **DENIED**.

4. Plaintiff's Motion to Make My Complaint Not Protection [Docket No. 103] is **GRANTED**. Jackson's Complaint [Docket No. 1] is unsealed subject to the foregoing redactions.

DATED: May 16, 2019
at Minneapolis, Minnesota.

                                                JOHN R. TUNHEIM
                                                Chief Judge
                                             United States District Court